UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DONATO RINALDI,
    *Plaintiff*,

    v.

ADAM LAIRD and MICHAEL MODEEN,
    *Defendants*.

No. 3:14-cv-00091 (JAM)

**MEMORANDUM OF DECISION**

This case involves all-too-familiar allegations of police brutality against a criminal suspect who has fled from and is apprehended by the police. Late one night in October 2011, plaintiff Donato Rinaldi led the police in Waterbury, Connecticut on a high-speed car chase after his accomplice stole goods from a supermarket. When the police finally stopped Rinaldi's car, he alleges that they violently assaulted him despite the fact that he surrendered and did not resist arrest.

He brought this federal civil rights action pursuant to 42 U.S.C. § 1983 against two Waterbury police officers—defendants Adam Laird and Michael Modeen—claiming that they violated his constitutional right under the Fourth Amendment to be free from the use of excessive force. The matter proceeded to a bench trial before me last week, and this is my ruling.

For the reasons set forth below, I conclude that Rinaldi has not proven that Laird used excessive force. On the other hand, I conclude that Rinaldi has proven that Modeen used excessive force and that Modeen shall be liable to Rinaldi for $10,000 in compensatory damages.

## BACKGROUND

The following findings of fact are based on the testimony and evidence at trial.[1] The parties agree about most of what happened except for what occurred during the first few minutes after Rinaldi was stopped and secured by the police following a car chase. Accordingly, I will first describe the background facts about which the parties generally agree before turning to a description of the parties' contrasting accounts about the nature of the officers' initial encounter with Rinaldi after the stop of his car.

### A. The Theft and Police Pursuit

Rinaldi is a long-time resident of Watertown, Connecticut, who works in masonry and construction. In October 2011, he and an acquaintance, Derek Ramdin, spent a weekend together in which they regularly ingested cocaine. Late in the evening of October 10, 2011, Rinaldi and Ramdin hatched a scheme to steal Red Bull energy drinks from a supermarket and in hopes of reselling the drinks to a bodega in order to buy more cocaine.[2]

At around 10:00 pm, Rinaldi and Ramdin drove in Rinaldi's car to a supermarket in Southbury, Connecticut. While Rinaldi waited outside, Ramdin went inside to steal the Red Bulls. Soon enough, Ramdin came dashing out with the stolen goods, closely followed by supermarket employees trying to stop him. Ramdin got into the car, and Rinaldi made good the escape, driving away back toward Waterbury.

---

[1] The following witnesses testified at trial. Plaintiff called himself as a witness and then rested his case. Defendants called each of themselves as witnesses, as well as Sergeant Steven Anastasio of the Waterbury Police Department, and then rested their case. Plaintiff did not put on a rebuttal case. Plaintiff introduced two documentary exhibits: hospital records of his treatment shortly after his arrest (Pl. Exh. #1), and a booking photograph of himself that was taken at the police station within a few hours after plaintiff's arrest (Pl. Exh. #2). The defense did not introduce any exhibits.

[2] Plaintiff testified that he was no longer under the influence of cocaine at the time of the escapade that led to his arrest, but defendant's challenged this assertion on cross-examination. I have fully considered the possibility that plaintiff was under the influence of some cocaine at the time of the critical events in this case.

But Rinaldi and Ramdin's troubles were far from over. A short time later, a Connecticut state police trooper spotted Rinaldi's car and pulled him over on I-84 between Southbury and Waterbury. Rinaldi at first complied, and he turned over his driver's license and registration upon request. But while the trooper was verifying the papers, Rinaldi suddenly drove away. He testified that he fled because he knew he was in violation of probation and did not want to be arrested again. The trooper—now shortly joined by at least two other trooper cars—pursued Rinaldi. At some point along the highway, the troopers tried to force Rinaldi's car off the highway, and Rinaldi ran into or over a traffic sign.

Rinaldi eventually exited the highway and then led the state and local police on a chase through the streets of Waterbury. At one point, the police hemmed in Rinaldi on a dead end street. But Rinaldi eluded capture by driving through someone's backyard, including through some shrubs and running up and over some steps on the outside of the house. During that part of the chase, Rinaldi drove near another trooper who was outside of his car and with gun drawn but who did not fire.

In the meantime, defendants Laird and Modeen—patrol officers for the City of Waterbury—were in a police car together about to finish their shift. They learned over the radio about the ongoing chase, including that Rinaldi had nearly run over a police officer, and they kept on the lookout for Rinaldi's car. At around 10:30 pm, they saw the car cut through a diner parking lot and they joined the chase. Rinaldi veered toward Laird and Modeen's cruiser, forcing Laird (who was driving) to do an evasive maneuver. Rinaldi then spun his car around, and Laird and Modeen now took the lead in the chase behind him, closely following Rinaldi down Watertown Avenue, until they reached a four-way intersection with Aurora Street. Near that intersection, Rinaldi slowed as if about to take a right turn but then abruptly veered left, clipping

3

the front of the police cruiser and setting Rinaldi's car into a 180-degree spin to come to rest in the street face-to-face with the police cruiser.[3]

Both Laird and Modeen immediately emerged from their cruiser to secure Rinaldi on the driver's side and Ramdin on the passenger's side. At that point, however, the parties' versions of what happened diverge. I will first describe Rinaldi's version, then I will describe the police officers' version.

### B. Rinaldi's Version

Rinaldi testified that after his collision with the police car, he remained in his driver's seat with his hands on the steering wheel. Two officers whom he identified as Laird and Modeen came running toward his door, pulling on leather gloves. He did not know the officers at the time, but he claimed in court to recognize both of them by their faces, and in particular he insisted that he knew Modeen, saying "I won't forget the face."

Rinaldi testified that the officers told him to get out of the car, and he did not immediately respond. Modeen struck him while he was still in the car with some kind of a blunt object like a flashlight that Rinaldi was not able to identify. He was struck three or four times before he was dragged out of the car, then he was beaten down to the ground and repeatedly punched, kicked, and stomped on by Laird and Modeen. They were telling him, "Your day's over," and "You think you're a tough guy."

According to Rinaldi, he was struck more than a dozen times by Laird and Modeen. The majority of blows were delivered to his face, the back of his head, and his lower back. At the end of the encounter, Rinaldi was lying on the ground, face down and "buried" in the pavement. Rinaldi testified that he did nothing to resist, fight back, or to protest or taunt the officers.

---

[3] The police officer defendants testified that Rinaldi cut across their path, while Rinaldi testified that the police purposefully clipped his car to put it into a spin. This discrepancy makes no difference to the outcome of this case.

Eventually, Rinaldi was handcuffed, and the beating stopped. He heard someone say to "pull off" him because a sergeant was coming. About a dozen local and state police officers were now present, and an ambulance also arrived. Rinaldi was taken by ambulance to the hospital. He did not want medical treatment but said he was cleaned up somewhat and given two bandages for his face. He was then taken from the hospital to a state police barracks where his booking photo was taken. This photo was admitted as an exhibit at trial and is reproduced here:



Rinaldi testified that all of the damage to his face was from blows by Laird and Modeen. The bandage covering a wound underneath his left eye was from a blow that he received from Modeen with a blunt object while he was still in his car. The bandage on the right side of his face above his eye covered a wound to his forehead from being dragged on to the pavement. According to Rinaldi, the remaining damage to and around his right eye was from the officers pounding his face, and the photograph was "self-explanatory" about what happened to him.

Rinaldi's account was subject to vigorous challenge under cross-examination. The cross-examination tried to suggest that Rinaldi had identified the wrong officers, including that he had previously filed a different federal court lawsuit against two other police officers in addition to Laird and Modeen. The cross-examination also tried to suggest that the damage to Rinaldi's face could have resulted from the car chase when he was not wearing a seatbelt and had had numerous sudden turns and collisions with objects. The cross-examination relied on the records from Rinaldi's treatment at the hospital and the lack of any reference in the treatment records to any allegation by Rinaldi that he had been beaten up by the police. The cross-examination further challenged his ability to recall the events in question in light of his use of cocaine. And during cross-examination, Rinaldi admitted that he had lied to the state police after his arrest, falsely claiming that Ramdin had threatened him with a gun to make him go along with the scheme to steal from the supermarket.

### C. The Police Officers' Version

The defense case involved testimony from three police officer witnesses—Laird, Modeen, and Sergeant Steven Anastasio of the Waterbury police department. Each of these officers testified at odds with Rinaldi's account.

*Testimony of Officer Michael Modeen.* Officer Modeen was the first of the defense witnesses. He testified that after Rinaldi's car came to a stop face-to-face with his police cruiser, he ran up to Rinaldi's side of the car to secure him, while Laird ran to the passenger side of the car to secure Ramdin. According to Modeen, Laird had no involvement with the securing and handcuffing of Rinaldi.

When Modeen arrived outside Rinaldi's driver-side door, Rinaldi had both hands on the steering wheel. After Rinaldi did not immediately respond to his command to get out of the car,

6

Modeen opened the door, grabbed him by his right arm and pulled him out of the car, along with the assistance of another unnamed officer.

Outside the car, Rinaldi was standing up facing Modeen, and Modeen was holding Rinaldi's right arm. According to Modeen, Rinaldi then tried to pull away from Modeen, and Modeen pulled back on the other direction. They then both fell down on the ground, with Rinaldi's face pressed in to the pavement and Modeen lying on top of him with his chest on top of Rinaldi's head.[4]

Modeen is a large man and weighed about 250 pounds at the time of the encounter. Rinaldi's arms were underneath his body, and—according to Modeen—he was trying to prevent himself from being handcuffed, despite Modeen's yelling at him to give up his arms. Modeen testified that Rinaldi's head was moving "wildly" from side to side against the pavement. By this time, several other officers were on the scene, and the other officers managed to secure Rinaldi's arms and put him in handcuffs.

Although Modeen testified that Rinaldi resisted arrest, he also testified that Rinaldi did not strike or try to strike him. Modeen categorically denied punching, kicking, or striking Rinaldi at any time, and he denied seeing any other officer do so. When I asked Modeen if he had felt angry or upset at the time that he was trying to secure Rinaldi, he denied feeling angry and said that he just wanted to get to Rinaldi fast and establish control over him.

On cross-examination, Modeen was shown the photograph of Rinaldi's damaged face. He was asked if Rinaldi looked like he did in the photograph when Modeen removed him from the car, and Modeen testified that he did not. He testified that he did not know how Rinaldi had come to receive the injuries to his face that are shown in the photograph.

---

[4] Modeen's testimony on this point was not consistent. At first, he testified that the two of them simply fell to the ground as if by accident. In response to follow up questions that I posed to him, he testified that he intentionally brought Rinaldi to the ground after Rinaldi tried to pull his arm away.

*Testimony of Officer Adam Laird.* Officer Laird testified that after Rinaldi's car came to a stop, he went to the passenger-side of Rinaldi's car (while Modeen went to the driver-side), and he successfully secured Ramdin without incident. According to Laird, his police cruiser was nose-to-nose with Rinaldi's car, and he could not have crossed over to Rinaldi's side without going behind his own cruiser to do so.

Laird testified that he had no involvement with securing or arresting Rinaldi and that he did not see Rinaldi until after Rinaldi was secured and in handcuffs. He had "tunnel vision" on Ramdin while securing him, and he did not see any encounter between Modeen and Rinaldi on the driver-side of the car. Laird denied striking, punching, or kicking Rinaldi at any time.

*Testimony of Sergeant Steven Anastasio.* Sergeant Anastasio testified that he arrived at the scene after learning that one of the Waterbury police cars had been in an accident. He testified that upon his arrival he saw that Modeen was entangled with Rinaldi. He could not remember if they were standing up or on the ground when he arrived. According to Anastasio, he asked a state police trooper who was on the scene for some handcuffs; Rinaldi was then on the ground, and he helped extract Rinaldi's right arm from under his body to secure the handcuffs.

Anastasio testified that, at the time he handcuffed Rinaldi, Modeen was kneeling by Rinaldi's head and placing pressure points on Rinaldi's neck in an effort to force surrender of his arms from underneath him. According to Anastasio, Laird was not involved at all with securing Rinaldi. Anastasio testified that he did not punch, kick, or strike Rinaldi and that he did not see Modeen punch, kick, or strike Rinaldi.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV.

Because the Fourth Amendment protects against unreasonable seizures, it has long been recognized that the Fourth Amendment is violated when the police use excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386 (1989).

As the Supreme Court has explained, whether law enforcement officers' use of force is "excessive" must be judged by "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted). Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97; *see also Brown v. City of New York*, 798 F.3d 94, 100-03 (2d Cir. 2015) (discussing Fourth Amendment standard for excessive force claims).

Because this is a civil lawsuit and not a criminal prosecution, my task here is to determine whether Rinaldi has proven his case by a preponderance of the evidence (*i.e.*, that the facts establish that it is more likely than not that the defendant officers used constitutionally excessive force). I caution at the outset that I would not necessarily reach the same factual conclusions in this case were I to apply the far more demanding standard of beyond-a-reasonable-doubt that applies in criminal cases.

I adopt as findings of fact all of the facts as recited above that have not been subject to material dispute. With respect to the parties' contrasting versions of what occurred to Rinaldi in

the minutes immediately following the stop of his car in Waterbury, I conclude that Rinaldi's account is more credible in most but not all respects than the accounts of the police officers.

Most important to me in my evaluation of the evidence is the photograph of Rinaldi's face that was taken at the police barracks following his treatment at the hospital. The photograph is overwhelmingly consistent with Rinaldi's contention that he was beaten up by somebody. The appearance of the injuries to his face are consistent with him being struck there multiple times. Just as a picture proverbially tells a thousand words, this photograph bespeaks an enormously brutal violation of Rinaldi's constitutional rights.

I am not persuaded by defendants' alternative explanations for the injuries to Rinaldi's face. The evidence that any of these injuries was caused by the tumult of the car chase is weak. The injuries across Rinaldi's face do not look like the kind that would result from an accident mishap as opposed to multiple blows to the face. There were no photographs of the cars involved or other tangible evidence to support a contention that Rinaldi likely sustained the kinds of injuries he suffered because of any collision or being tossed around inside his car.[5]

Modeen's own testimony was inconsistent with the defense theory that the injuries to Rinaldi's face occurred during the car chase. Modeen testified that Rinaldi did *not* look the way he looks in the photograph at the time that Modeen first encountered him at the conclusion of the car chase. Although it is true that the booking photograph of Rinaldi was taken maybe several hours later and after Rinaldi's wounds had time to swell and discolor, Modeen saw plaintiff's

---

[5] Defense counsel at trial argued that the hospital records do not reflect any statement by Rinaldi that he was beaten by the police. But the records are equivocal, because neither is there any denial of being beaten by the police or alleged attribution of Rinaldi's injuries to any other source. The relevant entry in the hospital records reflects that he was injured "after police pursuit" (not "before" or "during" a police pursuit) and that he was the victim of "blunt trauma." Because of the ambiguity in the entry in the records themselves and the lack of any witness from the hospital to testify about these records and any statements made by Rinaldi at the hospital, I find the hospital records to be of little value to my decision in this case.

face clearly before he exited the car, and nothing in his testimony—or anyone else's testimony—remotely suggested that Rinaldi had any facial injuries at that time.

Nor am I persuaded that the injuries as they appear in the photograph were self-inflicted by Rinaldi as he allegedly squirmed on the ground and moved his head from side to side while face down on the asphalt and underneath Modeen. The injuries shown in the photograph are suggestive of blunt trauma (as the hospital records reflect) rather than abrasions from rubbing on the ground. It defies belief to conclude that Rinaldi suffered such significant injuries and bruising to both of his eyes, the side of his head, the left side of his face, and the bridge of his nose (without any mark whatsoever on the tip of his nose) from squirming on the ground with a 250 pound man attempting to hold him still.

The evidence admits of no other plausible or likely explanation for the injuries to Rinaldi's face than physical blows administered by someone upon his apprehension after the car chase. The photograph powerfully corroborates Rinaldi's otherwise credible description of how he was punched, kicked, and struck by the police.

That leaves a remaining question of *who* is responsible: whether the evidence proves that it was Laird and/or Modeen—rather than other officers who have not been named as defendants in this action—who assaulted Rinaldi. I will first consider the evidence against Laird. Despite Rinaldi's testimony that Laird took part in the assault, I conclude that Rinaldi has not proven Laird's involvement by a preponderance of the evidence. Rinaldi was less certain in his identification of Laird than he was of Modeen at trial. The testimony of the police officers otherwise convincingly established that Laird acted to secure Ramdin at the scene on the passenger-side of the car rather than interacting with Rinaldi on the driver-side of the car. This makes sense in light of the physical nose-to-nose positioning of the two cars at the time that both

Rinaldi and Ramdin were secured—it would make most sense for Laird to have acted immediately to secure Ramdin who was closest to Laird. I think it unlikely that Laird would have had time to secure Ramdin and then to come around the rear end of one of the cars and to participate in the punching, kicking, and striking of Rinaldi, all of which took place quickly before he was secured in handcuffs.[6] For lack of evidence to show that he had contemporaneous knowledge of and was in a physical position to have stopped the abuse of Rinaldi by any other police officers, I also cannot conclude that Laird had any actionable duty to intervene to prevent the abuse of Rinaldi. *See Figueroa v. Mazza*, ___ F.3d ___, 2016 WL 3126772, at *11 (2d Cir. 2016) (noting that "a police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it").

As to Modeen, I conclude that Rinaldi has proven by a preponderance of the evidence that Modeen assaulted him and without any constitutionally justifiable reason for doing so. To begin with, there is no dispute that Modeen physically interacted with Rinaldi at the scene. Modeen himself testified that he was the first one to arrive outside Rinaldi's driver-side door after the stop of Rinaldi's car and then the first officer to lay hands on Rinaldi to place him under arrest.

Notwithstanding the numerous points made by defense counsel on cross-examination, I conclude that Rinaldi's identification of Modeen as his primary assailant was otherwise credible. Modeen's contrary account was rendered less credible in part by his shifting description from having *accidentally* fallen to the ground with Rinaldi to having *intentionally* brought Rinaldi to the ground.

---

[6] To the extent that Rinaldi's testimony identifying Laird as one of his assailants is not credible, I do not conclude that Rinaldi necessarily lied in his testimony but simply that he was mistaken. It is just as likely that he saw Laird's face that evening and assumed him to be one of his assailants.

To the extent that Rinaldi testified that there was at least one other assailant besides Modeen and that I have otherwise concluded that the other assailant was not proven to be Laird, I conclude that there was likely another assailant who has not been successfully identified to date by Rinaldi. Whether there was just one assailant or multiple assailants, a preponderance of the evidence convincingly shows that Modeen was the primary assailant, and I need not determine the identity of any other assailants who were not named as defendants in the case before me.

In short, I conclude by a preponderance of the evidence that defendant Michael Modeen, while acting under color of law, used excessive force by means of punching, kicking, and striking plaintiff Donato Rinaldi on the night of October 10, 2011. Although Rinaldi put many people in danger through his reckless attempt to escape from the police, he posed no threat once he was stopped. He sat still, with his hands on the steering wheel, clearly not in possession of a weapon. Modeen struck Rinaldi while he was still in the car, yanked him out of the car, and then continued to punch and kick him despite the fact that Rinaldi posed no immediate threat, did not attempt to flee, to resist arrest, or to fight back.

The force used by Modeen was plainly and painfully in excess of what the Constitution allows. With respect to any defense of qualified immunity, I further conclude that—in view of the facts known to Modeen at the time that he engaged in his physical assault on Rinaldi—any objectively reasonable law enforcement would have known such conduct to violate the clearly established constitutional right of Rinaldi to be free from excessive force.[7]

### DAMAGES

The "basic purpose" of a damages award under § 1983 is "to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S.

---

[7] During the course of closing arguments, Modeen's counsel conceded that if Rinaldi's version of the facts in this case were true, then Modeen would not be entitled to a defense of qualified immunity.

247, 254 (1978). In deciding what damages to award plaintiff, I am guided by traditional common-law tort principles of compensation for injury. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). Under these principles, properly compensable injuries include tangible losses (*e.g.*, medical expenses, lost wages, and other out-of-pocket expenses) as well as intangible harm (*e.g.*, personal humiliation, loss of reputation, physical pain and suffering, and mental anguish). *See id.* at 306-07. It is plaintiff who has the burden to prove damages, and "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Id.* at 308.

Plaintiff has proved by a preponderance of the evidence that he suffered injuries when he was beaten. The booking photograph and plaintiff's testimony establish at least that he suffered significant physical pain during the event. But plaintiff adduced little evidence of long-term injury. He did not put into evidence any medical bills, or testify regarding any wages or other lost income he suffered as a result of his injuries. He indicated that he suffered from pain in his lower back and right side for "a couple months." He said he could not hear out of his right ear or see out of his right eye for "a while," but did not specifically define how long. In terms of emotional distress, he indicated that when he hears police sirens, he "freaks out" and that for a while he had difficulty sleeping because he kept thinking about the beating.

I conclude that plaintiff is entitled to an award of $10,000 in compensatory damages. This amount of damages is adequate to compensate plaintiff for the physical pain and injury inflicted on him by Modeen. I otherwise decline to award any damages for humiliation or emotional distress, because Rinaldi offered no evidence of such damages other than his own testimony. *See Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, 310 F.3d 43, 55 (2d Cir. 2002) ("A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of

emotional distress damages."). In view of plaintiff's own conduct in this case involving his headlong flight from the police, I do not credit his claim that the reason that he may "freak out" when he hears police sirens or experience other emotional anguish is because of the abuse he experienced that night. Plaintiff has not otherwise established any tangible damages.

I reject plaintiff's claim for punitive damages. A court may award punitive damages "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). But an award of punitive damages is discretionary, and punitive damages "are never awarded as of right, no matter how egregious the defendant's conduct." *Id.* at 52.

Here, I decline to exercise my discretion to award punitive damages. As his own counsel acknowledged during closing arguments, Rinaldi's conduct that evening was nothing less than outrageous. He took part in a scheme to steal from a supermarket to gratify his desire for illegal drugs, and then he needlessly and heedlessly put the lives of innocent civilians and police officers in danger by fleeing from the police. This not to say that Modeen had any right to abuse Rinaldi or that Modeen was right to descend beneath the highest standards of law enforcement professionalism. Still, it is at least understandable (even if not at all justifiable) why Modeen evidently lost his temper and abused Rinaldi as he did. I decline to reward Rinaldi for tempting the police through his own recklessness to act on the worst of human impulses.

## CONCLUSION

Plaintiff Donato Rinaldi has proven by a preponderance of the evidence that defendant Michael Modeen but not defendant Adam Laird violated his constitutional right to be free from the use of excessive force. Judgment shall enter in favor of defendant Laird for dismissal of the

complaint and shall enter against defendant Modeen with compensatory damages in the amount of $10,000.

    It is so ordered.

    Dated at New Haven this 5th day of August 2016.

                                           /s/ *Jeffrey Alker Meyer*
                                             Jeffrey Alker Meyer
                                             United States District Judge